UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS MOSQUEDA,<br><br>  Petitioner,<br><br>  v.<br><br>MICHAEL MARTEL,<br><br>  Respondents. | No. 2:11-cv-0745 TLN AC<br><br>FINDINGS AND RECOMMENDATION |

  Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his 2008 convictions for numerous drug offenses (ECF No. 1). The case proceeds on the basis of the first amended petition, ECF No. 16, filed on November 15, 2011. Respondent has answered, ECF No. 28, and petitioner has filed a traverse, ECF No. 29.

  For the reasons that follow, the undersigned recommends that the petition be denied on the merits without an evidentiary hearing.

I.     LEGAL AND FACTUAL BACKGROUND

Carlos Mosqueda was convicted following a jury trial in the Sacramento County Superior Court of transporting methamphetamine, furnishing methamphetamine to a minor, and two counts of possessing methamphetamine for sale. He was sentenced to 25 years to life imprisonment, plus a consecutive term of one year and eight months. The facts as recited by the California Court of Appeal are presumed true for purposes of this court's review under the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA").  See 28 U.S.C. § 2254(e)(1).  The court of appeal found that:

> In May 2006, Special Agent Erik Crowder of the Bureau of Alcohol, Tobacco, Firearms and Explosives was investigating Sergei Walton for trafficking in firearms and dealing drugs. Agent Crowder arrested Walton for selling a machine gun, and Walton offered to provide evidence on other drug dealers.
>
> Walton made a number of calls to "Carlos." Agent Crowder was listening in on the calls and could hear both sides of the conversation. He was also recording the conversations. Walton arranged to buy a quarter-pound of methamphetamine for $3,000 from Carlos. Carlos said he would deliver the drugs to Walton's residence.
>
> Agent Crowder notified local law enforcement about the drug deal, and they sent a surveillance team to defendant's address. At about 7:45 p.m., Detective Kevin Patton saw a Dodge Intrepid pull into the driveway of the house. The driver, an adult Hispanic male, and the passenger, a female, got out of the car and went into the house. No one else came in or out of the house. A couple of hours later, a dark sedan pulled up to the house. Defendant ran out of the house and got into the sedan, which then drove away.
>
> The officers followed the sedan for about 10 minutes. The sedan was pulled over .37 miles away from Walton's house. Defendant's sister was driving and defendant was sitting in the front passenger seat. Thomas H., a juvenile, was in the backseat.
>
> Defendant initially gave officers a false name, and his sister also tried to hide his identity. Upon searching Thomas H., officers found a baggie with 109 grams of methamphetamine in his waistband and a smaller baggie with 13.6 grams of methamphetamine in his shoe. Defendant was also searched and the officers recovered $590 in cash in his pockets, mostly in $20 bills. They also recovered two cell phones from the car. At the scene, Thomas H. told the officers defendant had handed him the methamphetamine when the officers activated their sirens, saying, "Get this, get this. They won't check you because you['re] a kid."
>
> The officers then searched defendant's home and found a digital scale and 48.4 grams of methamphetamine. There was also paperwork in the home connecting defendant to the address and the Dodge Intrepid.
>
> Detective Jason Oliver qualified as an expert in possession of methamphetamine and possession of methamphetamine for sale. He testified that a normal dose of methamphetamine is .1 to .2 grams, costing $10 or $20. Normally, a user would keep only two to three grams on them at a time. He further opined, given the quantities of methamphetamine found on Thomas H., and the quantities found in defendant's home combined with the digital scale found at

defendant's home, all the methamphetamine was possessed for sale. Lodged Doc. 4 at 2-3.

Following affirmance of his convictions by the California Supreme Court, petitioner filed the instant federal action. This case was subsequently stayed in order to allow petitioner to exhaust an ineffective assistance of counsel claim in state court. ECF No. 14. After completing one full round of state habeas review, petitioner filed an amended federal habeas petition challenging his convictions and sentence. ECF No. 16.

## II.   STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the AEDPA, provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407–08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520–21 (2003). State court decisions can be objectively unreasonable when they interpret Supreme Court precedent too restrictively, when they fail to give appropriate consideration and weight to the full body of available evidence, and when they proceed on the basis of factual error. See, e.g., Williams, 529 U.S. at 397–98; Wiggins, 539 U.S. at 526–28 & 534; Rompilla v. Beard, 545 U.S. 374, 388–909 (2005); Porter v. McCollum, 558 U.S. 30, 42 (2009).

The "unreasonable application" clause permits habeas relief based on the application of a governing principle to a set of facts different from those of the case in which the principle was announced. Lockyer, 538 U.S. at 76. The AEDPA does not require a nearly identical fact pattern before a legal rule must be applied. Panetti v. Quarterman, 551 U.S. 930, 953 (2007). Even a general standard may be applied in an unreasonable manner. Id. In such cases, AEDPA deference does not apply to the federal court's adjudication of the claim. Id. at 948.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71–72 (2003). Clearly established federal law also includes "the legal principles and standards flowing from precedent." Bradley v. Duncan, 315 F.3d 1091, 1101 (9th Cir.2002) (quoting Taylor v. Withrow, 288 F.3d 846, 852 (6th Cir.2002)). Only Supreme Court precedent may constitute "clearly established Federal law," but circuit law has persuasive value regarding what law is "clearly established" and what constitutes "unreasonable application" of that law. Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir.2000).

Relief is also available under AEDPA where the state court predicates its adjudication of a claim on an unreasonable factual determination. 28 U.S.C. § 2254(d)(2). The statute explicitly limits this inquiry to the evidence that was before the state court. Even factual determinations that are generally accorded heightened deference, such as credibility findings, are subject to scrutiny for objective reasonableness under § 2254(d)(2). See e.g., Miller–El v. Dretke, 545 U.S. 231, 240 (2005) (rejecting credibility finding as unreasonable in light of the evidence before the state court).

Section 2254(d) constitutes a "constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus." Williams, 529 U.S. at 412. To prevail, therefore, a habeas petitioner must establish the applicability of one of the § 2254(d) exceptions and also must also affirmatively establish the constitutional invalidity of his custody under pre-AEDPA standards. Frantz v. Hazey, 533 F.3d 724 (9th Cir.2008) (en banc). There is no single prescribed order in which these two inquiries must be conducted. Id. at 736–37. The AEDPA does not require the federal habeas court to adopt any one methodology. Lockyer v. Andrade,

538 U.S. 63, 71 (2003).

### III. THE STATE COURT ADJUDICATION OF PETITIONER'S CLAIMS

All of the claims contained in the amended federal petition, with the exception of the ineffective assistance of counsel claim, were raised and rejected on direct appeal. Because the state supreme court denied discretionary review, the decision of the California Court of Appeal (Lodged Doc. 4) constitutes the last reasoned decision on the merits of these claims. See Ylst v. Nunnemaker, 501 U.S. 797 (1991). With respect to petitioner's ineffective assistance of counsel claim, the last reasoned state court opinion is the order from the Sacramento Superior Court denying habeas relief (Lodged Doc. 7). These state court opinions are the subjects of this court's reasonableness review under AEDPA. See 28 U.S.C. § 2254(d). Because the state courts denied relief in reasoned opinions, review under § 2254(d) is confined to "the state court's actual reasoning" and "actual analysis." Frantz, 533 F.3d at 738.

### IV. THE STATE COURT'S FACTUAL DETERMINATIONS

Petitioner alleges material inaccuracies in the direct appeal opinion's statement of facts. See ECF No. 29 at 4. As a result, he argues that the appellate decision is not entitled to the AEDPA's presumption of correctness. First, petitioner points to Thomas H.'s trial testimony indicating that he did not think that the quarter gallon Ziploc baggie of drugs could have been passed to him from underneath the front passenger seat. 1 R.T. 81. Despite the juvenile's denials at the time of trial, however, the jury's verdict indicated that his earlier statements to police were found more credible. A jury's credibility assessment is entitled to near total deference on habeas review. See Schlup v. Delo, 513 U.S. 298, 330 (195). Petitioner also points to the lack of trial testimony specifically identifying him as the individual who left the residence on Alcott Drive and then got into the vehicle that was stopped by police. However, this is more of a mole hill than a mountain because Detective Patton testified that the individual who left the house entered the vehicle through the right front passenger door. 1 R.T. 98. The vehicle was then followed by police, and when it was stopped a short time later the petitioner was sitting in the right front passenger seat. For these reasons, the state court's factual recitation was neither inaccurate nor unreasonable.

5

Moreover, the state court's resolution of petitioner's claims did not turn on the particular facts that petitioner now disputes.  See 28 U.S.C. § 2254(d)(2) (habeas relief not barred if state court decision "was *based on* an unreasonable determination of the facts. . .") (emphasis added).  Therefore, petitioner fails to rebut the presumption of correctness which attaches to the California Court of Appeal's statement of facts.

> V.     THE STATE COURT'S APPLICATION OF FEDERAL LAW
>
> *A. Confrontation Clause Challenge*

The trial court admitted, over defense objection, the transcripts and tape recordings of telephone calls between informant Walton and "Carlos."  Walton died prior to trial and was never a witness at any court proceeding where he was subject to cross-examination.  Petitioner contends that the admission of this evidence therefore violated his right of confrontation under the Sixth and Fourteenth Amendments and runs afoul of the Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004).

In Crawford, the Supreme Court held that that the Confrontation Clause prohibits the admission of "testimonial" out-of-court statements by non-testifying individuals.  In the present case, the California Court of Appeal assumed without deciding that the taped statements were "testimonial in nature and offered to prove the truth of the matter asserted," namely that Carlos was the individual from whom Walton had ordered the methamphetamine.  See Lodged Doc. 4, at 6. The court of appeal found that "[t]he pretextual phone calls with Walton mostly provided a framework for understanding why officers stopped defendant in the first place.  To the extent they added anything substantive to the evidence, it was on the issue of defendant's intent to sell, a point established by Detective Oliver's testimony."  Lodged Doc. 4 at 7.   Accordingly, the state court rejected petitioner's confrontation claim on grounds that admission of the taped statements was harmless beyond a reasonable doubt.  Id.

In order "[t]o grant relief where a state court has determined that a constitutional error was harmless, we must both determine (1) that the state court's decision was "contrary to" or an "unreasonable application" of Supreme Court harmless error precedent, and (2) that the petitioner suffered prejudice under Brecht from the constitutional error." Inthavong v. Lamarque, 420 F.3d

6

1055, 1059 (9th Cir. 2005).  In the habeas context, an error is deemed harmful if it had a "substantial and injurious effect or influence" on the jury's verdict.  See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

In support of his argument that the California Court of Appeal's harmless error analysis was unreasonable, petitioner submitted an affidavit in which he avers that his trial attorney questioned the jury after the verdict about what piece of evidence persuaded them to convict and his attorney told him that all the jurors agreed that it was the tape recordings by Agent Crowder.  See ECF No. 16 at 52.  The AEDPA requires that the reasonableness of the state court's harmless error analysis be evaluated objectively, rather than from any juror's particular subjective point of view.  See Mitchell v. Esparza, 540 U.S. 12 (2003) (emphasizing that "habeas relief is appropriate only if the… [state court] applied harmless-error review in an 'objectively unreasonable' manner").  The substantial evidence demonstrating petitioner's guilt included the fact that he was stopped by police while riding in a car with over 100 grams of methamphetamine.  He had $590 in cash in his pockets at the time of the stop, all in small denominations.  The juvenile passenger made several statements to police indicating that petitioner was the one who gave him the methamphetamine when the police activated their lights and siren.  A search of petitioner's house uncovered an additional 48 grams of methamphetamine along with a digital scale.  It was uncontroverted at trial that the amount of methamphetamine seized was consistent with sales rather than personal use.  Habeas relief is therefore not warranted with respect to this claim.

Even if this claim were not subject to AEDPA deference, plaintiff would not prevail on the merits.  "[N]ot all hearsay implicates the Sixth Amendment's core concerns," Crawford, 541 U.S. at 51, and Crawford's bright-line confrontation requirement applies only to "testimonial" statements.  Statements similar to those at issue here have regularly been held not to constitute testimonial hearsay for which confrontation is constitutionally mandated.  See e.g., United States v. Valerio, 441 F.3d 837 (9th Cir. 2006) (no error in admission of recorded conversation between defendant and informant); United States v. Tolliver, 454 F.3d 660, 665 (7th Cir. 2006) (finding that a defendant's statements to a confidential informant were not testimonial under Crawford because they did not recount past events but instead were "making candid, real-time comments

about drugs transactions in progress" that were never expected to be used against him in a criminal trial); United States v. Saget, 377 F.3d 223 (2d Cir. 2004) (concluding that a declarant's statements to a confidential informant, whose undercover status was not known to the declarant, were not testimonial within the meaning of Crawford). Because the taped statements did not constitute testimonial hearsay, the trial court did not violate petitioner's confrontation clause rights by admitting them.

### B. Ineffective Assistance of Counsel Claim

Related to his Crawford claim, petitioner raises a challenge to his counsel's effectiveness at trial. Petitioner first argues that trial counsel should have renewed his motion to exclude the audiotaped conversations once Agent Crowder was recalled to the stand to correct his earlier mistaken testimony that the person who received the calls from Walton identified himself as "Carlos." According to petitioner, this changed testimony (1) demonstrated that there was no foundation to admit the taped conversations in the first place, and (2) supported a motion for a mistrial. See ECF No. 16 at 44; see also I R.T. 250, 257-58; II R.T. 343-47.[1]

To establish a constitutional violation based on ineffective assistance of counsel, a petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 692, 694 (1984). Prejudice means that the error actually had an adverse effect on the defense. There must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 693–94. The court need not address both prongs of the Strickland test if the petitioner's showing is insufficient as to one prong. Id. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

In rejecting this claim, the state court denied relief under both prongs of Strickland. See Lodged Doc. 7 at 2. "[E]ven if trial counsel had made a successful objection to the admission of the tapes on the ground that no reliable evidence was introduced at trial identifying petitioner as a

---

[1] "R.T." refers to the two volumes of reporter's transcripts lodged by the respondent.

8

1 participant in the calls… it is beyond a reasonable doubt that petitioner still would have been
2 convicted of the charges." Id.  The state court further found that any renewed motion to suppress
3 based on Agent Crowder's alleged mistaken testimony "would have been denied, and petitioner's
4 trial counsel was not ineffective in failing to make the motion." Id.

5 The state court did not unreasonably apply the Strickland standard.  While Strickland
6 itself creates a "high bar" for challenging attorney error, in this case petitioner is not alleging that
7 counsel completely failed to make any challenge to the audiotaped conversations.  See Harrington
8 v. Richter, 131 S. Ct. 770 (2011) (emphasizing that "the Strickland standard must be applied with
9 scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary
10 process the right to counsel is meant to serve").  Petitioner merely argues that counsel failed to
11 renew his motion to suppress.  The state court found that relitigating the motion would not have
12 changed the outcome of the proceedings.  A review of Agent Crowder's additional testimony
13 supports this conclusion.  While petitioner portrays this testimony as correcting an earlier mistake
14 by Agent Crowder, it is not so clear-cut.  When recalled, Agent Crowder stated that he could not
15 testify that "the voice that's speaking to Sergei [Walton] identif[ied] itself as Carlos… because
16 there's unintelligible portions that are attributed to Carlos as well as Sergei [Walton]." II R.T. at
17 344.  After adopting his testimony from a prior proceeding in which he stated that the person
18 speaking to Walton identified himself as Carlos, Agent Crowder once again testified that, based
19 on his recollection, the person with whom Walton was speaking identified himself as Carlos.  II
20 R.T. at 347.  On this record, petitioner cannot demonstrate that the state court's determination
21 constitutes an unreasonable application of Strickland or an unreasonable determination of the
22 facts.  Habeas relief therefore is not available.

23 Petitioner also alleges that trial counsel was ineffective for not challenging the audiotapes
24 under 18 U.S.C. § 2510-2522, because "the state did not and could not meet the burden of
25 proving that the tapes were the product of a consensual third party interception."  See ECF No. 16
26 at 48.  After reviewing the trial transcripts and the transcript of the recorded conversation, the
27 state court denied relief on this claim finding that the informant "impliedly consented to their
28 being overheard and recorded." See Lodged Doc. 7 at 3.  Petitioner does not point to anything in

9

1  the record that undercuts this finding, which is a perfectly reasonable inference from that fact that
2  the informant and the government agent were sitting together in a car when the calls were
3  recorded.  Accordingly, the state court decision was neither based on an unreasonable
4  determination of the facts nor unreasonable in light of clearly established federal law.  See <u>United</u>
5  <u>States v. Ryan</u>, 548 F.2d 782 (9th Cir. 1976) (stating that "the law in this circuit is clear that one
6  party's consent is sufficient justification for electronic surveillance and no prior judicial
7  authorization is required").  Habeas relief should therefore be denied.

8      *C. Sentencing Challenge.*

9       Petitioner's last claim for relief alleges that the use of his prior juvenile adjudication to
10 sentence him under California's Three Strikes Law violates <u>Apprendi v. New Jersey</u>, 530 U.S.
11 466 (2000), and its progeny because he was not afforded the right to a jury trial during the prior
12 juvenile adjudication.  In a bifurcated proceeding, the trial court found petitioner's prior juvenile
13 adjudication to be true and used it in conjunction with a prior adult conviction to sentence
14 petitioner to 25 years to life.  II R.T. 423-24, 446.

15       Petitioner argues that the state court's rejection of this claim was contrary to <u>United States</u>
16 <u>v. Tighe</u>, 266 F.3d 1187, 1194-95 (9th Cir. 2001), which held that prior juvenile adjudications do
17 not fall within <u>Apprendi</u>'s prior conviction exception because they do not provide the procedural
18 safeguards of adult convictions, namely jury trial and proof beyond a reasonable doubt.[2]
19 However, for purposes of federal habeas review, <u>United States v. Tighe</u> "does not represent
20 clearly established federal law as determined by the Supreme Court."  <u>Boyd v. Newland</u>, 467 F.3d
21 1139, 1152 (9th Cir. 2006) (internal quotation marks and citations omitted).

22       This court's review under the AEDPA is limited to determining whether the state court's
23 conclusion that juvenile adjudications fall within the <u>Apprendi</u> exception was contrary to or
24 involved an unreasonable application of clearly established federal law as determined by the
25 United States Supreme Court.  28 U.S.C. § 2254(d).  Because the Supreme Court has never

---

[2] The California Court of Appeal rejected this challenge relying upon the then recent decision in <u>People v. Nguyen</u>, 46 Cal.4th 1007, 1028 (2009), which held that the use of a prior juvenile adjudication fell within <u>Apprendi</u>'s prior conviction exception and therefore was not barred from being counted as a strike under California's Three Strikes Law.

10

specifically excluded juvenile convictions from the "prior conviction" exception to Apprendi, the state courts' determination that juvenile convictions may count as a strike under California's Three Strikes Law does not violate clearly established federal law. See Wright v. Van Patten, 552 U.S. 120, 126 (2008) (stating that where the Supreme Court's cases "give no clear answer to the question presented," the state court's rejection of a petitioner's claim cannot constitute an unreasonable application of clearly established federal law) (citation and internal quotations omitted); John-Charles v. California, 646 F.3d 1243, 1253 (9th Cir.), cert. denied, 132 S. Ct. 855 (2011) (denying relief because no clearly established Supreme Court precedent precludes the use of a juvenile adjudication to enhance a sentence). Thus, habeas relief is not warranted on this claim.

## CONCLUSION

For all the reasons set forth above, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the

////
////
////
////
////

specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 16, 2013

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

AC:ts/mosq0745.157.kjm